QUESTION: May real property which is being used for the commercial production of catfish be classified as "agricultural" for ad valorem tax assessment purposes under s. 193.461, F.S.?
SUMMARY: Real property which is being used for the commercial production of catfish may be classified as "agricultural" for ad valorem tax assessment purposes under s. 193.461, F.S. Your question should, in my opinion, be answered in the affirmative. The Legislature first provided for the special assessment for ad valorem taxation of agricultural lands in Ch. 59-226, Laws of Florida [s. 193.201, F.S. 1959]. The express reason for this act was a finding that . . . much of the recent real estate development has tended to increase assessments on farm and agricultural lands and other agricultural products to unreasonable and unprofitable proportions, thus forcing many persons to give up their livelihood because of being taxed out of existence. . . . [Chapter 59-226, supra.] See also Wershow, Agricultural Zoning in Florida, 13 U. Fla. L. Rev. 479 (1960). Subsection (4) of s. 1, Ch. 59-226, supra, provided: For the purpose of this section, "agricultural lands" shall include horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee and all forms of farm products and farm production. In accordance with the expressed legislative purpose of the legislation, and utilizing the doctrine of statutory construction of ejusdem generis, see 30 Fla. Jur. Statutes s. 92 (1974), it is my opinion that land used for the commercial production of catfish could have qualified as "agricultural lands" and could have been classified, or zoned, as "agricultural" for purposes of ad valorem tax assessment under the 1959 law. However, in 1967 the Legislature enacted Ch. 67-117, Laws of Florida [amending s. 193.201, supra], which, inter alia, provided: (5) For the purpose of this section, "agricultural lands" shall include horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, pisciculture where the land is used principally for the production of tropical fish and all forms of farm products and farm production. (Emphasis supplied.) In 1972 the Legislature enacted Ch. 72-181, Laws of Florida, which initially stated that . . . It is the declared policy of the state to conserve and protect and to encourage the development and improvement of its agricultural lands for the production of food and other agricultural products . . . . * * * * * . . . It is the intent of this act to provide a means by which agricultural and outdoor recreational land may be protected and enhanced as a viable segment of the state's economy and as an economic and environmental resource of major importance . . . . Section 1 of Ch. 72-181, supra, amended s. 193.461, F.S., to provide for agricultural classification of land, rather than "zoning," and subsection (5) of s. 193.461 to provide: (5) For the purpose of this section, "agricultural purposes" shall include horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, pisciculture where the land is used principally for the production of tropical fish and all forms of farm products and farm production. (Emphasis supplied.) Apparently the Statutory Revision and Indexing Division of the Joint Legislative Management Committee made some changes (indicated by the italicization) in the punctuation and language when compiling the 1973 edition of the Florida Statutes, for s. 193.461(5), F.S. 1973, now provides: (5) For the purpose of this section, "agricultural purposes" shall include horticulture; floriculture; viticulture; forestry; dairy; livestock; poultry; bee; pisciculture, when the land is used principally for the production of tropical fish; and all forms of farm products and farm production. The question which you have presented thus essentially involves a determination of whether the Legislature, by virtue of the amendments made by Chs. 67-117 and 72-181, supra, intended to, or did, exclude from the benefits of the special assessment for ad valorem taxation land used for pisciculture, unless it is tropical fish which are involved. It is my opinion, pending judicial or legislative clarification, that it was not the intent of the Legislature, or the effect of the amendments, to provide such a limitation; and, thus, use of land for the commercial production of catfish, a food crop, could qualify as an "agricultural purpose" within the purview of s. 193.461(5), F.S. 1973. Again, it is the expressed purpose of the Legislature, supra, and the doctrine of statutory construction of ejusdem generis which lead me to this conclusion. As Professor Sands wrote in revising 2A Sutherland Statutory Construction s. 47.18 (4th ed. 1973), at p. 110: [T]he doctrine of ejusdem generis calls for more than merely an abstract exercise in semantics and formal logic. It rests, instead, on practical insights about everyday language usage . . . . The problem is to determine what particulars that were not mentioned are sufficiently like those that were, in ways that are germane to the subject and purpose of the act, to be made subject to the act's provisions by force of the general reference. . . . Germaneness to the subject and purpose of the statute, viewed in terms of legislative intent or meaning to others, is the basis for determining which among various semantically correct definitions of the class should be given effect. It is my opinion that the commercial production of catfish is sufficiently like horticulture, floriculture, and the other enumerated categories in s. 193.461(5), F.S. 1973, "in ways that are germane to the subject and purpose of the act," i.e., the special, lower assessment for ad valorem taxation of land used for the production of food so as to make such enterprises more economically
feasible and thus to protect the general welfare of Florida, to warrant its inclusion in the term agricultural purposes.